UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ROBERT K. DECKER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Cause No. 2:19-cv-00616-JRS-MJD |
| J. BRADLEY, | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

Robert Decker is once again challenging a disciplinary sanction that was imposed against him in 2017. He already filed a Section 2241 petition contesting that decision, which this Court denied. Now Decker has sued Disciplinary Hearing Officer J. Bradley personally, claiming that Bradley retaliated against him and violated his due process rights.

As set forth below, Plaintiff's First Amendment retaliation claim presents a new *Bivens* context and seeks to protect an interest for which an alternative avenues of relief already exist. Other "special factors" also counsel against an expansion of *Bivens* here. *See Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). Indeed, courts around the country have rejected First Amendment *Bivens* claims on *Abbasi* grounds. Accordingly, that claim should be dismissed.

Plaintiff's Fifth Amendment claim must also be dismissed. Plaintiff has already asserted and fully litigated that claim before this Court and the Seventh Circuit in a habeas corpus proceeding and he lost. Accordingly, he is collaterally estopped from asserting it here. Plaintiff's allegations in support of that claim also fall short of the viability standard in multiple other respects and, accordingly, that claim must also be dismissed on those alternate, independent grounds.

Based on the foregoing, Defendant J. Bradley respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed his complaint (the "Complaint") in this matter on September 9, 2019. (Dkt. 1.) On March 9, 2020, the Court issued its Order Granting Motion to Screen Complaint, Screening Complaint, and Directing Service of Process (the "Screening Order"). (Dkt. 19.) That Screening Order observed, *inter alia*,

> [P]laintiff alleges on that on September 13, 2017, while he was incarcerated at Terre Haute FCI, Disciplinary Hearing Officer J. Bradley violated his due process rights and right to be free from cruel and unusual punishment when he imposed [a] previously suspended sanction [of 60 days in segregation] well after the 180 days [of the suspension period] had expired. The plaintiff alleges that Officer Bradley did this in retaliation for the plaintiff's numerous grievances and disciplinary appeals.

*Id*. at 3. The Court screened those allegations and directed that "[P]laintiff's First Amendment retaliation and due process claims against Officer J. Bradley **shall proceed**." (*Id*. at 5.)

The factual allegations underlying those First and Fifth Amendment claims are set forth in Section IV.D of the Complaint. That paragraph states:

> I was seen by D.H.O. P. Donovan on February 2, 2017 for a discplinary[1] hearing for violation of Offense Code(s) 203 & 196. He imposed 30 days disciplinary segregation, suspended for 180 days on each offense code. 60 days total. DHO P. Donovan had violated my due process rights by not allowing me the assitance of a Staff Representative and to call witnesses on my behalf. He had stated that "You won't need either one because I am just going to find you guilty anyways". D.H.O. J. Bradley had imposed the 60 disciplinary segregation time against me on Septmeber 13, 2017 for an offense code 112 well past the 180 days that it was

---

[1] For clarity and ease of reference, Defendant has transcribed the allegations of Plaintiff's Complaint verbatim.

2

originally suspended for, therefore violating my due process and my rights to cruel and unusual punishment. This was in retaliation to me filing numerous grievances and disciplinary appeals against him to the Regional Director's Office, therefore he had violated my first amendment rights to file grievances and appeals.

(Dkt. 1 at 3.)

### A. Decker's Incidents and Disciplinary Proceedings

The first disciplinary hearing referenced in Section IV.D is documented in Incident Report 2940591. (*See* Dkt. 44-1, Declaration of Melody Prouse ("Prouse Dec."); *see also* Dkt. 44-2, Incident Report 2940591.)[2] As Plaintiff alleges in his complaint, that hearing was held on February 2, 2017. (Dkt. 44-2 at 1.) As Plaintiff also alleges in his complaint, that hearing related to Code 196 and Code 203 offenses – *i.e.*, the Use of Mail for Illegal Purposes and Threats to Another, respectively. (*Id*. at 2.) Specifically, the hearing related to charges that on January 17, 2017, Plaintiff had sent mail to an outside contact that included threatening statements such as "Stay away from my wife and son or I swear I will send so many niggers to your house and your Mom's house and I have the addresses to fuck with both your Mom and sister" and "When I get up north I will be giving out your name and address to every killer, rapist and child molester so they can pay you a visit." (*Id*. at 1-2.) And as Plaintiff further alleges in his complaint, he was found to have committed the prohibited acts, and 30 days of disciplinary segregation, *inter alia*, were imposed as to each offense, with both of those penalties suspended. (*Id*.)

---

[2] Documents that are extrinsic to a complaint may be considered on a motion to dismiss where they are "central" or "integral" to the pleading. *Mitchell v. Muncie Cmty. Sch.*, No. 115CV01881JMSDML, 2016 WL 3881888, at *3, n.2 (S.D. Ind. July 15, 2016) (accepting use of EEOC materials in motion to dismiss employment discrimination case even though those materials were not attached to plaintiff's pleading). Defendant Bradley's respective use of and involvement in Incident Reports 2940591 and 3011373 form the basis of, and are essential to, Plaintiff's claims in this case and, accordingly, are appropriately introduced here.

The second disciplinary hearing referenced in Section IV.D is documented in Incident Report 3011373. (*See* Dkt. 44-1, Prouse Dec.; *see also* Dkt. 44-3, Incident Report 3011373.) That hearing occurred on September 13, 2017 (Dkt. 44-3 at 1), and involved allegations that on Plaintiff had engaged in a prohibited use of alcohol on July 18, 2017. (*Id*. at 2.) As a result of that hearing, the presiding Discipline Hearing Officer, Defendant J. Bradley, determined that Plaintiff had committed the prohibited act and, as a result, executed the two suspended 30-day sentences of disciplinary segregation that had been imposed at the February 2, 2017, disciplinary hearing. (*Id*. at 3 ("[This h]earing is also basis of execution of suspended sanctions from IR#2940591 / 60 Days Disciplinary Segregation.").) Defendant Bradley imposed several other sanctions as well, including a disallowance of 41 days of good conduct time. (*Id*.)

### B. Decker Files a 2241 Petition, Which is Denied.

On April 24, 2018, Plaintiff filed a petition for a writ of habeas corpus in the Southern District of Indiana, Terre Haute Division, under 28 U.S.C. § 2241, challenging the discipline imposed by Incident Report 3011373, including the execution of the two 30-day sentences of disciplinary segregation that had been imposed at the February 2, 2017, disciplinary hearing. (*Decker v. Krueger*, 2:18-cv-00198-JRS-DLP, Dkt. 1, at 2.) Specifically, that petition identified, *inter alia*, the following issues: "violation of the Equal Protection Clause, Violation of due process. Imposed 60 [sic] disciplinary segregation illegally . . ." (*Id*.) In the supporting facts section of that petition, Plaintiff further alleged, "I appeared before DHO Bradley on 9-13-2017. The alleged incident was from July 18, 2017. My disciplinary seg time was suspended from 1-17-2017 for six months so DHO Bradley arbitrarily sanctioned me illegally." (*Id*. at 6.)

4

On October 12, 2018, the district court denied that petition, stating, "There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Decker to the relief he seeks." (*Decker v. Krueger*, 2:18-cv-00198-JRS-DLP, Dkt. 17 at 5.) Plaintiff appealed that ruling on October 29, 2018. (*Decker v. Krueger*, 2:18-cv-00198-JRS-DLP, Dkt. 19.) On July 19, 2019, the Seventh Circuit Court of Appeals affirmed the ruling of the district court. (*Decker v. Krueger*, 2:18-cv-00198-JRS-DLP, Dkt. 26.)

**LEGAL STANDARD**

A party may bring a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss a claim for which a plaintiff is not entitled to relief. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011) (citation omitted). In other words, a plaintiff's complaint must "provide the 'grounds' of her 'entitle[ment] to relief'" based upon more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is proper "if the complaint fails to set forth 'enough facts to state a claim to relief that is plausible on its face.'" *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 570). In ruling on a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the well-pled facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**ARGUMENT**

## I. Plaintiff's First Amendment Retaliation Claim Is Barred Under *Abassi*.

In *Abbasi*, 137 S. Ct. at 1857, the Supreme Court declined—not for the first time—to extend *Bivens* to a new category of constitutional claims, emphasizing that expanding the *Bivens* remedy is now a "disfavored" judicial activity.[3]

After *Abbasi*, determining whether a *Bivens* remedy is available amounts to a three-step analysis. First, the court must determine whether the claim arises in a new *Bivens* context. *Id.* at 1864. If so, the next question is whether there is "an alternative, existing process for protecting the [relevant] interest [which] amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *accord Abbasi*, 137 S. Ct. at 1858. And, finally, courts consider whether there are any other "special factors counseling hesitation before authorizing a new kind of federal litigation." *Wilkie*, 551 U.S. at 550 (citation omitted); *accord Abbasi*, 137 S. Ct. at 1857.

Under this analysis, the Court should decline to extend *Bivens* to create a First Amendment retaliation claim for federal prisoners against prison officials in their individual capacities.

### A. A First Amendment Retaliation Claim is a New *Bivens* Context.

The first question a court must ask in determining whether a *Bivens* remedy is available is whether the claim arises in a new *Bivens* context—in other words, whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 137 S.

---

[3] The Court further noted that, "in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Abbasi*, 137 S. Ct. at 1856.

6

Ct. at 1859, 1864. "[D]ifferences that are meaningful enough to make a given context a new one" may include, but are not limited to, "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1860.

The Supreme Court has recognized only three *Bivens* claims, including the claim in *Bivens* itself: (1) a Fourth Amendment claim against federal agents who violated the prohibition against unreasonable searches and seizures when they handcuffed a man in his own home without a warrant, *Bivens*, 403 U.S. 388; (2) a Fifth Amendment claim against a Congressman for firing his female administrative assistant, which was an alleged act of gender discrimination, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma, purportedly resulting in his death, *Carlson v. Green*, 446 U.S. 14 (1980). *Abbasi*, 137 S. Ct. at 1854-55, 1860. Moreover, in the last three decades, the Supreme Court has repeatedly declined to create new implied damages remedies under *Bivens* in a number of contexts. *See Abbasi*, 137 S. Ct. at 1857 (collecting cases).

Determining whether a case presents a new *Bivens* context is not based on whether a particular circuit has recognized a *Bivens* remedy in a specific context, but whether *the Supreme*

*Court itself* has recognized a *Bivens* claim in that context.[4] *See Abbasi*, 137 S. Ct. at 1859 ("If the case is different in a meaningful way from previous *Bivens* cases decided by *this Court*, then the context is new." (Emphasis added.)).

Here, Plaintiff attempts to bring a First Amendment retaliation claim under a *Bivens* theory against a BOP employee in his individual capacity. The Supreme Court, however, has *never* recognized a *Bivens* remedy for First Amendment claims. *See Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014) (acknowledging that the Supreme Court has never recognized an implied damages remedy under the First Amendment); *Reichle v. Howards*, 132 S. Ct. 2088, 2093 n.4 (2012) (noting that the Supreme Court has "never held that *Bivens* extends to First Amendment claims"); *Iqbal*, 556 U.S. at 675 (assuming, without deciding, that a free exercise claim was actionable because the issue was not raised on appeal and noting that the reluctance to extend *Bivens* liability "might well have disposed of respondent's First Amendment claim of religious discrimination"); and *Sebolt v. Samuels*, 749 F. App'x 458, 459 (7th Cir. 2018) (unpublished) (recognizing that the Supreme Court has not yet declared violations of the First Amendment actionable under *Bivens*). The Supreme Court has also affirmatively declined to extend *Bivens* to a claim sounding in the First Amendment. *Bush v. Lucas*, 462 U.S. 367, 390 (1983). Furthermore, the context presented by Plaintiff's First Amendment claims in this action bears no resemblance to the three *Bivens* cases the Supreme Court has previously recognized. Accordingly, a "special factors" analysis is necessary before the damages suit may be permitted to proceed. *See Abbasi*, 137 S. Ct. at 1859-60, 1864.

---

[4] Although the Seventh Circuit assumed the availability of First Amendment claims under *Bivens* prior to *Abbasi*, *see, e.g.*, *Daly v. Davis*, No. 08-2046, 2009 WL 773880 (7th Cir. Mar. 25, 2009) (unpublished); *King v. Fed. Bureau of Prisons*, 415 F.3d 634 (7th Cir. 2005), *Abbasi* makes clear that whenever a case presents a new context, a special factors analysis must be conducted. *See Abbasi*, 137 S. Ct. at 1860, 1865.

8

### B. There are Alternative, Existing Processes Precluding Expansion of *Bivens*.

In determining whether to expand the *Bivens* remedy, courts must consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550. Where an alternative process exists, it "usually precludes a court from authorizing a *Bivens* action." *Abbasi*, 137 S. Ct. at 1865. Here, there are alternative processes and remedies available to Plaintiff that should preclude extending *Bivens* to retaliation claims under the First Amendment in this context.

This Court has addressed the availability of alternative remedy process for First Amendment retaliation claims in a context similar to the present case before and stated, *inter alia*,

> [Plaintiff] has, of course, the Bureau of Prisons' administrative remedy process. He may bring retaliation conduct to the attention of administrators and seek non-monetary remedies. For any injuries he might have sustained, he is able to bring a claim under the Federal Torts Claim Act. Any retaliation that extends his confinement might be actionable in habeas corpus. And any retaliation that results in a violation of a previously recognized *Bivens* claim is another alternate remedy [Plaintiff] may pursue. As Defendants point out, [Plaintiff] is simultaneously litigating an Eighth Amendment claim under *Bivens* in this case involving many of the same injuries he complains about with regard to his First Amendment claim. . . . Thus, [Plaintiff] is not without a remedy to address the core concerns of his problems. Thus, this Court concludes that [Plaintiff] has alternative remedies he may use to address the retaliation issues.

*Badley v. Granger*, No. 217CV00041JMSDLP, 2018 WL 3022653, at *3 (S.D. Ind. June 18, 2018). A parallel analysis applies here: Plaintiff had access to the BOP's administrative remedy process as a means of addressing the First Amendment retaliation claim he asserts in this lawsuit. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (stating that the administrative remedy program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented

9

from recurring"). Plaintiff not only may seek redress for the execution of the suspended disciplinary segregation sanctions in habeas corpus but in fact has done so. Finally, Plaintiff is asserting a Fifth Amendment *Bivens* claim in this case involving many of the same injuries he complains about in his First Amendment claim, providing yet another alternative means of relief. *See Abbasi*, 137 S. Ct. at 1859 (acknowledging where "an alternative [remedy] is present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").

### C. Other Special Factors Also Counsel against a *Bivens* Remedy for First Amendment Retaliation Claims.

Other special factors also counsel against the expansion of *Bivens* here. The administrative remedy system discussed above, established by the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e, was created with the intent of limiting prison litigation that was overburdening the legal system. *See, e.g.*, *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits[.]"); *accord Badley*, 2018 WL 3022653, at *4 (S.D. Ind. June 18, 2018) (observing that Congress passed the PLRA with the intent of reducing the quantity of inmate suits).

Specific PLRA provisions that advance these aims include a requirement of total exhaustion of administrative remedies, *sua sponte* dismissal of meritless claims, and a bar on damages for mental or emotional injury absent a showing of physical injury or commission of a sexual act. *See* 42 U.S.C. § 1997e(a), (c), & (e). Where established procedures exist for protecting prisoners' rights—as exist here—and Congress requires prisoners to follow those procedures in order to reduce the burden of prisoner litigation on the legal system, separation of powers weighs against the creation of an implied remedy under *Bivens*. *See Badley*, 2018 WL 3022653, at *4

(S.D. Ind. June 18, 2018) ("Congress has been active in the area of prisoners' rights, and its actions—*not* creating new rights—do not support the creation of a new *Bivens* claim.").

In addition, in *Abbasi* the Court identified a "number of economic and governmental concerns" that courts must consider before recognizing an implied cause of action. *Abassi*, 137 S. Ct. at 1856. These concerns include the substantial defense costs often created by claims against federal officials; Congress' "substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government;" and "the time and administrative costs attendant upon intrusions resulting from the discovery and trial process." *Id.* Thus, the determination of whether to recognize a damages remedy "requires an assessment of its impact on governmental operations systemwide," one that considers "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." *Id.* at 1858. Here, expanding *Bivens* to encompass Plaintiff's First Amendment retaliation claim would implicate the routine operation of the BOP's internal disciplinary system and associated efforts to ensure the orderliness and safety of prison facilities and their inmates and staff. If faced with the prospect of personal liability under *Bivens*, BOP employees charged with administering that system would have to worry that inmates unsatisfied with or aggrieved by their execution of those duties could seek personal judgments against them based solely on First Amendment retaliation grounds.

Finally, after *Abbasi*, this Court has consistently found that First Amendment retaliation claims arise in a new context and declined to extend the *Bivens* remedy to these claims. *See, e.g.*,

*Kadamovas v. Siereveld*, No. 2:18-cv-00490-JRS-MJD, 2019 WL 2869674 (S.D. Ind. July 3, 2019); *Early v. Shepherd*, 2:16-cv-00085-JMS-MJD, 2018 WL 4539230 (S.D. Ind. Sept. 21, 2018); *Harris v. Dunbar*, 2:17-cv-00536-WTL-DLP, 2018 WL 3574736 (S.D. Ind. July 25, 2018); *Albrechtsen v. Parsons*, 1:17-cv-01665-JMS-TAB, 2018 WL 2100361 (S.D. Ind. May 7, 2018); *Muhammad v. Gehrke*, 2:15-cv-00334-WTL-MJD, 2018 WL 1334936 (S.D. Ind. Mar. 15, 2018). The majority of courts that have decided this issue nationwide have reached the same conclusion. *See, e.g.*, *Jones v. Sposato*, 783 F. App'x 214, 2019 WL 3546470, at *2 (3d Cir. Aug. 5, 2019); *Buenrostro v. Fajardo*, 770 F. App'x 807, 808 (9th Cir. 2019); *Vanderklok v. United States*, 868 F.3d 189, 208 (3d Cir. 2017); *Ruffin v. Rawls*, No. 5:18-cv-591-OC-39PRL, 2019 WL 3752812, at *5-6 (M.D. Fla. Aug. 8, 2019); *Kammeyer v. True*, No. 19-cv-00454-JPG, 2019 WL 2616193, at *3 (S.D. Ill. June 26, 2019); *Bruno v. United States*, No. 3:18cv1390-MCR-HTC, 2019 WL 2719803, at *3-4 (N.D. Fla. May 30, 2019), *report & recommendation adopted by* 2019 WL 2717973 (N.D. Fla. June 28, 2019); *Alexander v. Ortiz*, No. 15-6981 (JBS-AMD), 2018 WL 1399302, at *4-8 (D. N.J. Mar. 20, 2018); *Free v. Peikar*, No. 1:17-cv-00159 MJS (PC), 2018 WL 905388, at *5-6 (E.D. Cal. Feb. 15, 2018); *Jones v. U.S. Border Patrol Agent Hernandez*, No. 16-cv-1986 W (WVG), 2017 WL 5194636, at *12 (S.D. Cal. Nov. 9, 2017); *Attkisson v. Holder*, No. 1:17-cv-364 (LMB/JFA), 2017 WL 5013230, at *5-8 (E.D. Va. Nov. 1, 2017); *Newman v. United States*, No. C 16-06477 WHA, 2017 WL 4642012, at *3 (N.D. Cal. Oct. 16, 2017).

In view of the foregoing facts and law, the Court should reach the same conclusion as the Supreme Court and courts across the country and decline to create a *Bivens* remedy for Plaintiff's First Amendment retaliation claim.

## II. Plaintiff's Fifth Amendment Claim is Barred by Collateral Estoppel and Is Also Fatally Deficient on Its Own Terms.

Decker already had the opportunity to litigate his due process claim through his Section 2241 proceedings and did not prevail. He should not get another bite at the apple in a *Bivens* lawsuit, and the Court should, accordingly, dismiss his claim.

Collateral estoppel, or issue preclusion, has four elements:

> (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action.

*Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (citation omitted). Plaintiff's due process claim regarding Defendant Bradley's execution of the suspended 60 days in disciplinary segregation sanctions satisfies each of those elements: Plaintiff asserted and litigated the identical issue in *Decker v. Krueger*, 2:18-cv-00198, and the district court expressly found that that act was neither arbitrary nor constitutionally infirm. (*Id.*, Dkt. 17 at 5.) Plaintiff also appealed that decision to the Seventh Circuit, and the Seventh Circuit affirmed the ruling of the district court. (*Id.*, Dkts. 19, 26.) Accordingly, Plaintiff is barred from pursuing that claim here. *See Scherer v. Balkema*, 840 F.2d 437, 442-43 (7th Cir. 1988) (barring plaintiff from pursuing certain *Bivens* allegations on collateral estoppel grounds where he had unsuccessfully litigated those same issues through appeals of his criminal convictions).

Plaintiff's Fifth Amendment due process claim is also fatally deficient in multiple other respects. As an initial matter, a 60-day term in disciplinary segregation, by itself, does not implicate the due process clause. In *Sandin v. Conner*, 515 U.S. 472, 486, 115 S. Ct. 2293, 2301, 132 L. Ed. 2d 418 (1995), the Supreme Court held that a prisoner's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create

13

a liberty interest." Similarly, in *Singh v. Gegare*, 651 F. App'x 551 (7th Cir. 2016), the Seventh Circuit held that although a brief stint in punitive segregation may constitute a deprivation of liberty under the Due Process clause if there conditions of confinement were sufficiently severe or additional punishments were imposed, a 105-day period of such confinement, standing alone, could not give rise to a constitutional claim. *Singh*, 561 F. App'x at 555. The term of disciplinary segregation involved here, of course, is even shorter than that in *Singh*, and Plaintiff has not made any allegations regarding the conditions of that confinement or alleged that any additional punishments were imposed.

In addition, Plaintiff has not claimed discrimination based on membership in a suspect or quasi-suspect class. Accordingly, to the extent he intends to assert a Fifth Amendment equal protection claim here, it could only be a "class of one" claim. The Seventh Circuit has never recognized a class-of-one equal protection claim in the prison context, however. *See Key v. Shannon*, No. 17-CV-521-JDP, 2019 WL 3238638, at *7 (W.D. Wis. July 18, 2019); *Northern v. Dobbert*, No. 16-CV-277-JDP, 2019 WL 4758206, at *8 (W.D. Wis. Sept. 30, 2019) ("[A] class-of-one claim in the prison context is not clearly established."); *Turner v. Brown*, No. 17-CV-764-JDP, 2019 WL 3431158, at *8 (W.D. Wis. July 30, 2019) (prison officials entitled to qualified immunity on class-of-one claim due to absence of controlling legal authority stating that class-of-one equal protection claims can be raised in the prison context).

Even if such a claim were supported by circuit precedent, Plaintiff's allegations here could not support it. In order to state such a claim, a plaintiff must allege that he, as an individual, has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000);

14

*see also Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013) ("The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.'") (quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005)). Plaintiff has not made either of these two required allegations: his complaint asserts generic due process violations but does not contend that he was treated differently from others or that any such difference had no rational basis.

For all of these reasons, Plaintiff has failed to state a viable Fifth Amendment claim and, accordingly, that claim must also be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant J. Bradley respectfully requests that the Court dismiss all the claims against him in this matter, and grant such other and further relief as is just and necessary.

    Respectfully submitted,

By: */s/ Julian Wierenga*
    Julian C. Wierenga
    Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2020, a copy of the foregoing was filed electronically. Notice of this filing was also sent by first class U.S. Mail, postage prepaid, and properly addressed to the following:

Robert K. Decker
51719-074
TERRE HAUTE - FCI
TERRE HAUTE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

*/s/ Julian Wierenga*
Julian C. Wierenga
Assistant United States Attorney

Office of the United States Attorney
10 West Market Street
Suite 2100
Indianapolis, Indiana 46204
Telephone: (317) 226-6333